EXHIBIT 1

ELECTRONICALLY FILED
8/1/2025 9:08 AM
02-CV-2025-901927.00
CIRCUIT COURT OF
MOBILE COUNTY, ALABAMA
ASHLEIGH LONG, CLERK

## IN THE CIRCUIT COURT OF MOBILE COUNTY, ALABAMA

| | | |
|---|---|---|
| **MOBILE COUNTY WATER,** | * | |
| **SEWER & FIRE PROTECTION** | * | |
| **AUTHORITY,** | * | |
| | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No.:** _____ |
| | * | |
| **MUELLER SYSTEMS, LLC;** | * | |
| **MUELLER WATER PRODUCTS,** | * | |
| **INC.; SOUTHERN PIPE & SUPPLY** | * | |
| **COMPANY, INC.; SCOTT** | * | |
| **CARPENTER; BOBBY BARKER;** | * | |
| **RANDY PARADIS; and,** | * | |
| **JOHN DOES 1-10,** | * | |
| | * | |
| **Defendants.** | * | |

### COMPLAINT

Plaintiff, MOBILE COUNTY WATER, SEWER & FIRE PROTECTION AUTHORITY ("Mobile County Water"), files its Complaint against MUELLER SYSTEMS, LLC, MUELLER WATER PRODUCTS, INC., SOUTHERN PIPE & SUPPLY COMPANY, INC., SCOTT CARPENTER, BOBBY BARKER, and RANDY PARADIS and alleges as follows:

### PARTIES AND JURISDICTION

1.    Mobile County Water is a public corporation and rural service provider organized under the provisions of § 11-88-1 *et seq.* Code of Alabama, (1975) as amended. It is duly empowered as a rural water district. Mobile County Water provides water and sewerage services to the residents within a certain geographic service area within Mobile County, Alabama.  It has a capacity to produce more than seven million gallons of drinking water per day to its more than 13,000 customers in southern Mobile County.

2.    Mueller Systems, LLC is a foreign profit company, at all times material hereto, conducting business in Mobile County, Alabama.

1

3.      Mueller Water Products, Inc. is a foreign profit corporation, which at all times material hereto, conducting business in Mobile County, Alabama.

4.      Southern Pipe & Supply Company, Inc. is a foreign profit company, which at all times material hereto, conducting business in Mobile County, Alabama.

5.      Bobby Barker is an adult resident of Tallapoosa County, Alabama, whose whereabouts at the time of the execution are uncertain to Plaintiff.

6.      Randy Paradis is an adult resident of Marion County, Florida and upon Plaintiff's belief and understanding, was so at all times relevant to the underlying action.

7.      Scott Carpenter, State Manager of Southern Pipe at the time of execution of the Contract, is an adult resident of Helena County, Alabama and upon Plaintiff's belief and understanding, was so at all times relevant to the underlying action.

8.      Defendants John Does 1-10 are persons or entities who may be liable for all or part of the claims or damages set forth in this Complaint, but whose involvement or identity is unknown for now. These Defendants include, but are not limited to, the individuals or entities who performed improper manufacturing, installation, maintenance, or repairs for Mobile County Water's water meter system.

9.      Venue and jurisdiction are proper in this Court pursuant to Ala. Code § 6-3-7(a)(1) because Mobile County is where a substantial part of the events or omissions giving rise to the alleged conduct occurred.  Venue is also proper pursuant to Ala. Code § 6-3-7(a)(1) because it is the County in this state where Plaintiff has its office, and because one or more of the Defendants reside or conduct business within the State and/or Mobile County.

10.     This is an action for monetary damages exceeding the jurisdictional requirements of this Court, exclusive of interest, costs and attorneys' fees.

2

## GENERAL ALLEGATIONS

11.      On or about July of 2016, Mobile County Water issued a Request for Proposal furnishing labor and materials, and performing various aspects of work as outlined in Contract No.448900, Task 00008, Advanced Metering Infrastructure (AMI) System Pilot Study and all addendums thereto.

12.      The scope of the services **sought** was to implement an AMI System in the territory supplied by Mobile County Water Authority, located in Mobile County, Alabama to permit a cost efficient and time saving manner to remotely read water meters. The Request for Proposal also anticipated the replacement of residential and commercial water meters.

13.      Sometime thereafter, but before the deadline of August 11, 2016, Southern Pipe in conjunction with Mueller Systems, LLC (collectively "Mueller/Southern") submitted a proposal (the "Proposal") in response to Mobile County Water's Request for Proposal for Contract No.448900, Task 00008.

14.      The Proposal, among other things, included the integration of an Advanced Metering Infrastructure (AMI) System – Mi.Net from Mueller Systems.  The proposal also included 14,306 residential/commercial meters, 14,306 AMI Modules, 44 AMI Repeaters and 20 AMI Collectors in addition to AMI System Software and various other AMI components.

15.      The AMI water meter system was proposed to not only save Mobile County Water time and money by allowing Mobile County Water's operators to read water meters remotely, but Mueller's water meters were purported to be just as accurate as traditional water meters- if not more- and promised better efficiency, reliability and leak detection functions. In other words, Mueller/Southern and the corresponding agents promised that the meters were reasonably fit and suitable for the purpose Mobile County Water intended.

3

16.     The Proposal from Mueller/Southern expressly represented benefits and guarantees of Mueller System's AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters. Such express representations in the Mueller/Southern Proposal included, but are not limited to the following:

- Describing the Mi.Netsystem as "provid[ing] full two-way capability to each and every meter under the Mobile County Water Authority system allowing but not limited to: On-Demand Reads, Leak Detection and Remote Disconnect capabilities."
- Stating the "proposed Mi.Net solution has been proven for nearly 10 years"
- "The AMI modules shall be designed to operate in the conditions described herein and have a battery life of 20 years."
- "The AMI System shall provide 100% coverage of the MCW's service with a guaranteed 98.5% read success rate over a 3-day window."
- "[T]he manufacturer shall warranty the meter to meet or exceed AWWA repaired meter accuracy standards" which includes a fifteen (15) year warranty or, alternatively, is measured by millions of gallons registered.
- "The water meters, AMI modules and batteries shall have a 20 year warranty with 100% full replacement for the first ten year and prorated for the second 10 years."

17.     However, Defendants' failed to inform Mobile County Water that Mueller Systems had received numerous return orders for AMI systems and component parts, in particular meters, since at least 2012 and continuing into 2016 – material information that was suppressed from Mobile County Water and prevented Mobile County Water from considering in its evaluation of Mueller's AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters. Specifically, in the Proposal, there was a provision labeled "Current Violations or Claims" which simply stated "customers occasionally present product concerns and complaints."

18.     Based on Defendants' representations (as well as omissions) in meetings, presentations, discussions, and specifically the Proposal, on November 9, 2016, Mobile County Water entered into the Mueller Systems Master Agreement (the "Master Agreement") with Mueller Systems.

4

19.    Per the Master Agreement, Mueller Systems was to provide approximately 14,306 residential/commercial water meters and related products, network infrastructure and setup for the equipment, and related software and services to Mobile County Water in exchange for payment.

20.    Moreover, Mueller Systems expressly warranted that its software and equipment (i.e. water meters, etc.) would be "free from defects in material and workmanship," and if the software or equipment was not, Mueller Systems would repair or replace it. For services, the Master Agreement also warranted services would be performed in a workmanlike manner, and Muller Systems would remedy services not rendered in such a way by reperformance. Furthermore, the Master Agreement provided varying lifespan warranties, starting from the date of installation, for different components of the AMI system, with some warranting up to twenty-five years.

21.    Subsequently, Southern Pipe and Supply, Inc. and/or Mueller Systems arranged for the installation of the AMI system.

22.    Mobile County Water and Mueller Systems also entered into an Annual Service and Maintenance Agreement (the "Service Agreement") under which Mueller Systems agreed to provide technical support services, both contractual and warranty, for the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters.

23.    Since the time of the installation of the system, the majority of the water meters, repeaters and collectors provided by Mueller/Southern have become defective and not fit for their intended use, and the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters has not performed as contracted and warranted. Subsequent to the system's installation, Mobile County Water's operators have

5

experienced significant issues with the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters. Such issues include, but are not limited to: meters turning off, meters failing to communicate with the system, meters becoming stuck, meters incorrectly registering water usage levels of Mobile County residents, hardware failures, software failures, long lead time for meter replacements, and failure of the data transfer file.

24.     Mobile County Water notified Mueller Systems multiple times of the defective water meters and associated system problems it was experiencing. Randy Paradis ("Paradis"), a Mueller senior project manager, visited Mobile County Water and performed a site visit to address issues with the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters in or about October of 2021.

25.     From the time Mobile County Water communicated that there were issues with the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters, Mueller System and its agents responded with assurances that they would try to correct the issues. For example, on August 15, 2022, Mueller agent Cindy Kransler specifically communicated to Mobile County Water general manager Joe Summersgill:

> We understand that there are two main points caused by the substandard system performance -increased maintenance levels by your staff and potential lost revenue. To remedy this, Mueller Systems will perform the maintenance of the installed field equipment (meters, registers, radios, collectors and repeaters) and collect monthly billing reads either manually or via the AMI system until the system performance has stabilized to where it is at a reading level of 98.5% for at least 3 billing cycles with fewer than 20 meter, register, and node related issues per month.

However, Mueller System never stabilized the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters to read at a

6

level of 98.5% for a minimum of three billing cycles as promised in the Proposal as well as this subsequent communication.

26.     As recently as 2024, if not more recently, Mueller Systems delivered various replacement components in a failed attempt to fix the AMI System and its associated software, documentation, services, and/or equipment including, but not limited to, water meters.

27.     Thus, Mueller Systems never sufficiently repaired and/or replaced the AMI System and its associated software, documentation, services, and/or equipment including, but not limited to, water meters as promised in the Proposal, Master Agreement, and subsequent communications with Mueller Systems and its agents which continued through at least 2024.

28.     Notably, throughout the ongoing communications between Mobile County Water and Defendants, both before and after Mobile County Water entered the Master Agreement, Defendants never mentioned any problems similarly situated customers were experiencing, the subsequent lawsuits against Mueller Systems and Mueller Water Products, Inc. ("Mueller Water Products") resulting from the nationwide faulty Mueller AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters, Mueller's ongoing failure to properly fix the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters for its other customers, or Mueller's inability to properly fix the AMI system and its associated software, documentation, services, and equipment including, but not limited to, water meters as provided in the Mueller Limited Warranty.

29.     As of the date of the filing of this Complaint, more than half of all the original meters have failed and a significant number of the replacement meters have failed and continue to fail. Additionally, repeaters and connectors have also failed and continue to fail.

7

30.     As a result, the AMI system and its associated software, documentation, services, and/or equipment including, but not limited to, water meters continues to fail, and Mobile County Water has incurred and continues to incur millions of dollars in damages.

31.     Further, Mobile County Water has expended substantial funds and time in order to address the issues presented by the malfunctioning Mueller system and equipment including, but not limited to, $3,000.00 for an inspection of the collector atop Mobile County Water's water tower.

32.     Commencing in the first part of 2025, Mobile County Water was forced to advance a new pilot program to find a suitable replacement for advanced metering infrastructure and meters.

## COUNT I – FRAUDULENT MISREPRESENTATION

33.     Mobile County Water incorporates by reference each of the allegations made in paragraphs 1-32 above as if fully set forth herein.

34.     In meetings, presentations, and/or discussions, Defendants misrepresented to Mobile County Water that Mueller Systems would provide water meters and related advanced metering infrastructure, including software and equipment, that would properly function and be reasonably fit and suitable for their intended use.

35.     Specifically, the Mueller Proposal, which was prepared by Mueller/Southern and received between July 2016 and before August 11, 2016, described the Mi.Net as "provid[ing] full two-way capability to each and every meter in the County's system allowing but not limited to: On-Demand Reads, Leak Detection and Remote Disconnect capabilities." The AMI water meter system was proposed to not only save Mobile County time and money by allowing Mobile County Water's operators to read water meters remotely, but Mueller/Southern's water meters were just as

accurate as traditional water meters- if not more- and promised better efficiency, reliability and leak detection functions. Additionally, Mueller Systems expressly warranted in the Master Agreement that its equipment and software would be "free from defects in material[s] and workmanship."

36.    Furthermore, the Proposal, produced by Mueller/Southern between July and August of 2016, contained a provision labeled "Current Violations or Claims" which stated "customers occasionally present product concerns and complaints[,]" when in fact at the time the Proposal was submitted, Mueller had received numerous return orders for their water systems since at least 2012 and continuing into 2016.

37.    Defendants suppressed material information known to them that Southern/Mueller's water meters and associated equipment was not conducive to the environment in which Mobile County Water services its customers.  Mobile County Water detrimentally relied on Defendants' above referenced misrepresentation and suppression of material facts which were made willfully to deceive, recklessly without knowledge, and/or by mistake.

38.    Plaintiff alleges that Defendants' water meters and associated advanced metering infrastructure, including software and equipment, are defective; they produce incorrect readings of water use with less accuracy than the prior traditional water meters Mobile County Water previously utilized and have or experience other significant problems which have caused Mobile County Water to suffer ongoing monetary costs.

39.    Additionally, in meetings, presentations, discussions, the Proposal, and the Master Agreement, Defendants misrepresented to Mobile County Water that the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters would have a lifetime warranty of up to, in some cases, twenty-five (25) years, and that

Mueller Systems would replace and/or repair component parts of the AMI system, including but not limited to water meters, should a part be defective or not in a workmanlike manner.

40.     Specifically, Defendants failed to disclose the material fact that the Mueller Limited Warranty was ineffective in that it would not be able to sufficiently repair or replace the high number of defective meters needed for Mobile County Water's AMI System to fully operate as warranted.

41.     Defendants knew Mobile County Water's decision to enter into the Master Agreement was to receive an AMI system that would save Mobile County Water time and money through remote and accurate reading of water meters.

42.     These misrepresentations were material to Mobile County Water's decision to enter into the Contract and were made or withheld to deceive and induce Mobile County Water to enter into the Master Agreement.

43.     Mobile County Water reasonably relied on Defendants' intentional, willful, and/or reckless representations that the meters would function properly for the warranted lifespan, and/or be repaired and replaced according to meetings, presentations, discussions, the Proposal, and/or the Mueller Limited Warranty.

44.     Mobile County Water was not aware of, did not know, nor could have discovered, the concealed defects related to the meters or other AMI system components or the inadequacy of the Mueller Limited Warranty. Had Mobile County Water known of those defects and the inadequacy of the Mueller Limited Warranty, it would not have entered into the Master Agreement Mueller Systems. Thus, Mobile County Water's consent to the Master Agreement with Mueller Systems is void due to these Defendants' fraud in inducing Mobile County Water to enter into it and failure to disclose material facts.

45.     Because of Defendants' misrepresentations of material facts, Mobile County Water has suffered significant injuries and damages including, but not limited to, remediation costs, loss of use, lost revenue, lost efficiency, and other actual and consequential damages, and Mobile County Water will continue to suffer such damages.

**WHEREFORE**, MOBILE COUNTY WATER demands judgment against all Defendants, for monetary damages, interest, attorney fees, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT II – FRAUDULENT SUPPRESSION

46.     Mobile County Water incorporates by reference each of the allegations made in paragraphs 1-45 above as if fully set forth herein.

47.     In contracts, proposals, meetings, presentations, and/or discussions, Defendants misrepresented to Mobile County Water that Mueller Systems would provide water meters and related advanced metering infrastructure, including software and equipment, that would properly function and be reasonably fit and suitable for their intended use in this geographical environment. In these contracts, proposals, meetings, presentations, and/or discussions, Defendants also misrepresented to Mobile County Water that the AMI System and its component parts would have a lifetime warranty of up to, in some cases, twenty-five years, and that Mueller Systems would replace and/or repair component parts of the AMI system, including but not limited to water meters, should a part be defective or not in a workmanlike manner.

48.     Simultaneously, in these contracts, proposals, meetings, presentations, and/or discussions Defendants never disclosed any problems similarly situated customers were experiencing, the subsequent lawsuits against Mueller Systems and Mueller Water Products resulting from the nationwide faulty Mueller AMI System and its associated software,

11

documentation, services, and equipment including, but not limited to, water meters, Mueller's ongoing failure to properly fix the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters for its other customers, or Mueller's inability to properly fix the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters. Also, simultaneously, in these contracts, proposals, meetings, presentations, and/or discussions Defendants never disclosed an inability to comply with the warranted lifespan of the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters or the warranty to repair and replace.

49.    Specifically, in the Proposal produced by Mueller/Southern between July and August of 2016, there was a section labeled "Current Violations or Claims" which simply stated "customers occasionally present product concerns and complaints[,]" when in fact at the time the Mueller Proposal was submitted, Mueller had received **numerous** return orders for their water systems since at least 2012 and continuing into 2016.

50.    Defendants had a duty to disclose prior and/or ongoing issues with Mueller water meters and related advanced metering infrastructure they were having with entities across the county. Defendants also had a duty to disclose that the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters would not operate for the warranted lifespan, and Mueller Systems would not be able to sufficiently "repair or replace" such components. The Mueller Limited Warranty was insufficient to cover the systemic failure encountered by Mobile County Water which rendered it ineffective at maintaining a fully functioning AMI System.

51.     However, Defendants concealed and/or suppressed the material facts regarding known issues with the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters, warranted lifespan, and warranty to repair and replace.

52.     Defendants' concealment and suppression of facts induced Mobile County Water to enter the Master Agreement with Mueller Systems thereby purchasing defective equipment, software, and other items related to advanced metrology infrastructure systems.

53.     As discussed above, Defendants' water meters and associated advanced metering infrastructure, including software and equipment, are defective; therefore, they produce incorrect readings of water use and exhibit other significant problems harming and damaging Mobile County Water in the amount of several millions of dollars.

54.     Such harm is a proximate result of Defendants' concealment and suppression because had Mobile County Water possessed all the information to which it had a right, it would not have chosen Mueller and entered into the Master Agreement.

55.     Additionally, while Mueller Systems' representatives maintained ongoing contact with Mobile County Water after the Master Agreement was entered, Defendants continued concealing and suppressing material information regarding the Mueller water meters and associated advanced metering infrastructure, including software and equipment, to Mobile County Water's detriment.

56.     Had Mobile County Water known of such concealed information earlier, it could have minimized its damage by terminating the Master Agreement and seeking alternative advanced metering infrastructure sooner as opposed to enduring years of failed meters and unsuccessful attempts to fix the Mueller meters and system.

57.      Because of Defendants' fraudulent concealment and suppression of material facts, Mobile County Water has suffered significant injuries and damages in the amount of millions of dollars including, but not limited to, remediation costs, loss of use, lost revenue, lost efficiency, and other actual and consequential damages, and Mobile County Water will continue to suffer such damages.

**WHEREFORE**, MOBILE COUNTY WATER demands judgment against all Defendants, for monetary damages, interest, attorney fees, and for such other and further relief as this Court deems just and proper under the circumstances.

### COUNT III – NEGLIGENT MISREPRESENTATION

58.      Mobile County Water incorporates by reference each of the allegations made in paragraphs 1-57 above as if fully set forth herein.

59.      Upon information and belief, Defendants misrepresented the quality, reliability, suitability, and operational life of the AMI system and its associated software, documentation, services, and equipment including, but not limited to, water meters.

60.      Specifically, in the Mueller Proposal received by Mobile County Water between July 2016 and before August 11, 2016, Defendants misrepresented to Mobile County Water that the Mi.Net as "provid[ing] full two-way capability to each and every meter in the County's system allowing but not limited to: On-Demand Reads, Leak Detection and Remote Disconnect capabilities." The AMI water meter system was proposed to not only save Mobile County time and money by allowing Mobile County Water's operators to read water meters remotely, but Defendants' water meters were just as accurate as traditional water meters- if not more- and promised better efficiency, reliability and leak detection functions.

61.    However, in making these representations, Defendants knew or had reason to know that the AMI system and its associated software, documentation, services, and equipment including, but not limited to, water meters would not properly function and be reasonably fit and suitable for their intended use.

62.    Additionally, Mueller Systems expressly warranted in the Master Agreement that its equipment and software would be "free from defects in material[s] and workmanship," and that Mueller would "repair or replace[]" any equipment or software containing a defect or error. Mueller Systems further warranted the software would "perform substantially in conformance with the applicable documents. Regarding services, Mueller Systems warranted services would be performed in a "workmanlike manner," and services that were not performed as such would be remedies by "reperformance." Defendants also misrepresented varying warranted lifespans for the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters spanning up to twenty-five (25) years.

63.    Nonetheless, in making these representations, Defendants knew or had reason to know that Mueller Systems would not fulfill the obligations in the Master Agreement.

64.    Defendants' misrepresentations were material to Plaintiff's decision to enter into the Master Agreement.

65.    Defendants' misrepresentations were made willfully to deceive Plaintiff, recklessly, without knowledge of their truthfulness, or mistakenly.

66.    Plaintiff reasonably relied on the representations made by Defendants.

67.    The misrepresentations were negligent, in that Defendants had no reasonable grounds for believing them to be true. Instead, Defendants knew, or should have known, that the

AMI system and its associated software, documentation, services, and equipment including, but not limited to, water meters were defective and not conductive in this environment. This is especially true considering that at the time the Mueller Proposal was submitted; Mueller had received numerous return orders for their water systems since at least 2012 and continuing into 2016. Defendants also knew, or should have known Mueller Systems would not be able to fulfill its obligations in the Master Agreement for the aforementioned reasons, and especially would not be able to comply with the lifespan warranties and warranties to repair or replace in the event a high number of meters failed and jeopardized the integrity of Plaintiff's AMI System.

68.    As a direct and proximate result of the breach, misrepresentations of material facts, and the AMI system and its associated software, documentation, services, and equipment including, but not limited to, water meters failing to operate as represented, Mobile County Water has suffered significant injuries and damages including, but not limited to, remediation costs, loss of use, lost revenue, lost efficiency, and other actual and consequential damages, and Mobile County Water will continue to suffer such damages.

**WHEREFORE**, MOBILE COUNTY WATER demands judgment against all Defendants, for monetary damages, interest, attorney fees, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT IV – BREACH OF CONTRACT

69.    Mobile County Water incorporates by reference each of the allegations made in paragraphs 1-68 above as if fully set forth herein.

70.    On or about November 9, 2016, Mobile County Water and Mueller Systems, LLC entered into the Mueller Systems Master Agreement.

16

71.     Mobile County Water performed its obligations under the Master Agreement by tendering all payments and required notices pursuant to the Master Agreement.

72.     The Contract provided for the sale by Mueller Systems to Mobile County Water for "Equipment, Software, Documentation and other items related to advanced metrology infrastructure systems." The contract, also known as the Master Agreement, additionally warranted varying lifespans for the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters as well as a warranty to repair and replace.

73.     Mueller has breached the Mueller Systems Master Agreement by failing to provide, repair, and/or replace Equipment, Software, Services, Documentation, and other items related to advance metrology infrastructure systems that are free of defect and in good working order. Mueller also breached the Master Agreement because such failures occurred within some of the represented product lifespans.

74.     As a direct and foreseeable result of Mueller's breach of the Mueller Systems Master Agreement, Mobile County Water has suffered significant injuries and monetary damages including, but not limited to, remediation costs, loss of use, lost revenue, lost efficiency, and other actual and consequential damages, and Mobile County Water will continue to suffer such damages.

**WHEREFORE**, MOBILE COUNTY WATER demands judgment against all Defendants for monetary damages, interest, attorney fees, and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT V – BREACH OF EXPRESS WARRANTY

75.     Mobile County Water incorporates by reference each of the allegations made in paragraphs 1-74 above as if fully set forth herein.

17

76.    As discussed above, Mueller Systems entered into the Mueller Systems Master Agreement with Mobile County Water wherein Mueller Systems sold Mobile County Water "Equipment, Software, Documentation and other items related to advanced metrology infrastructure systems."

77.    Per the Mueller Systems Master Agreement entered into with Mobile County Water, Mueller Systems agreed to provide a Limited Warranty for its System Products including software, services, and equipment.

78.    Specifically, per the Mueller Limited Warranty, Mueller Systems agreed that it would furnish the software, services, and/or equipment free of defects in materials and workmanship as well as repair or replace any software and/or equipment that was found to be noncompliant. Thus, the Mueller Limited Warranty extended to future performance.

79.    AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters were overall defective and did not perform as promised.

80.    Specifically, the water meters were defective and not fit for their intended use; they resulted in inaccurate readings of water usage levels because they consistently under-registered or completely failed to register water flow.

81.    Of the approximately 14,300 meters installed, approximately over half have experienced a failure.

82.    Numerous water meters had to be replaced, with Paradis claiming a roughly 20% replacement rate in one estimate. Meters continue to fail and various components continue to fail on a daily basis.

83.    The defects in the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters. existed at the time of the

Mueller Systems Master Agreement, but Mobile County Water was unaware of such defects because Defendants misrepresented and/or suppressed this information.

84.     Defendants' knowledge, misrepresentation, and/or suppression of the defects at the time Mueller Systems and Mobile County Water entered the Master Agreement is evidenced by the fact that in the Mueller Proposal, produced between July and August of 2016, there was a section labeled "Current Violations or Claims" which simply stated "customers occasionally present product concerns and complaints[,]" when in fact at the time the Mueller Proposal was submitted, Mueller had received numerous return orders for their water systems since at least 2012 and continuing into 2016. Also, throughout these contracts, proposals, meetings, presentations, and/or discussions Defendants never disclosed any problems similarly situated customers were experiencing, the subsequent lawsuits against Mueller Systems and Mueller Water Products resulting from the nationwide faulty AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters, Mueller's ongoing failure to properly fix the AMI system and related components for its other customers, or Mueller's inability to properly fix the AMI System and its associated software, documentation, services, and equipment including, but not limited to, water meters.

85.     Mobile County Water has provided continuous notice of the issues to Mueller Systems in an attempt to have the issues cured under the Mueller Limited Warranty.

86.     To date, Mueller Systems has not been able to repair or replace the defective components of the AMI system as promised in the Mueller Limited Warranty as well as subsequent communications with Mueller System agents, thus Mueller Systems breached its express warranties. Mueller also breached an express warranty because the AMI System and its associated

software, documentation, services, and equipment including, but not limited to, water meters did not last for the warranted lifespan provided for in the Mueller Limited Warranty.

87.    In sum, the system is not performing as intended, and the Limited Warranty is failing in its essential purpose.

88.    As a direct and foreseeable result of Defendants' multiple breaches of the Mueller Limited Warranty, Mobile County Water has suffered significant injuries and damages in excess of several millions of dollars including, but not limited to, remediation costs, loss of use, lost revenue, lost efficiency, and other actual and consequential damages, and Mobile County Water will continue to suffer such damages.

**WHEREFORE**, MOBILE COUNTY WATER demands judgment against all Defendants for monetary damages, interest, attorney fees and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT VI – BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

89.    Mobile County Water incorporates by reference each of the allegations made in paragraphs 1-88 above as if fully set forth herein.

90.    Upon information and belief, all Defendants are merchants with respect to the design, manufacture, sale, or installation of the AMI system and its associated software, documentation, services, and equipment including, but not limited to, water meters.

91.    Defendants impliedly warranted by operation of law that the AMI system and its associated software, documentation, services, and equipment including, but not limited to, water meters were of merchantable quality.

20

92.     Defendants impliedly warranted they were capable of installing and delivering the fully operational AMI system and its associated software, documentation, services, and equipment including, but not limited to, water meters which Plaintiff purchased.

93.     Defendants breached the implied warranty of merchantability in that the AMI system and its associated software, documentation, services, and equipment including, but not limited to, the water meters were not of merchantable quality and fit for its ordinary purpose for which the AMI system and its associated components, including but not limited to water meters, were used. In fact, the AMI system and its associated software, documentation, services, and equipment including, but not limited to, the water meters failed well before their intended lifespan.

94.     Mobile County Water notified Mueller Systems multiple times of the defective water meters and associated system problems it was experiencing within a reasonable time of discovery, yet Mueller Systems failed to sufficiently repair or replace the meters and other defective AMI system components and return Mobile County Water's AMI system and its associated components, including but not limited to water meters, to fully operating as represented and required by the Master Agreement, the Mueller Limited Warranty, and subsequent communications with Mueller Systems and its agents.

95.     As a direct, proximate, and foreseeable result of the multiple breaches, Mobile County Water has suffered significant injuries and damages in excess of several millions of dollars including, but not limited to, remediation costs, loss of use, lost revenue, lost efficiency, and other actual and consequential damages, and Mobile County Water will continue to suffer such damages.

**WHEREFORE**, MOBILE COUNTY WATER demands judgment against all Defendants for monetary damages, interest, attorney fees and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT VII – BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

96.     Mobile County Water incorporates by reference each of the allegations made in paragraphs 1-95 above as if fully set forth herein.

97.     Mobile County Water purchased AMI system and its associated software, documentation, services, and equipment including, but not limited to, the water meters for the particular purpose of saving time and money. An important aspect of the AMI system Mobile County Water thought would achieve its goal of saving time and money was the ability to read water meters remotely.

98.     Mobile County Water expected the AMI system and its associated software, documentation, services, and equipment including, but not limited to, the water meters to be free of defects, perform for the warranted period, save Mobile County Water time and money,  and, in the event of a premature failure under the Mueller Limited Warranty, Mueller Systems would repair and replace any defective software of equipment, especially meters, to ensure Mobile County Water's AMI system was fully operational.

99.     Upon information and belief, Defendants knew or had reason to know that at the time of the purchase and installation of the AMI system and its associated software, documentation, services, and equipment including, but not limited to, the water meters, Mobile County Water expected to use the AMI system and the aforementioned components for the entirety of their warranted lifespan.

100.     Upon information and belief, Defendants knew or had reason to know that at the time of the purchase and installation of the AMI system and its associated software, documentation, services, and equipment including, but not limited to, the water meters, Mobile

County Water expected to use the AMI system and the aforementioned components to save Mobile County Water time and money.

101.    Upon information and belief, Defendants knew or had reason to know that at the time of the purchase and installation of the AMI system and its associated software, documentation, services, and equipment including, but not limited to, the water meters, sufficient, reliable, defect free performance of the AMI system and its aforementioned component parts was necessary for Mobile County Water's AMI system to operate as intended and provide its water services to its customers.

102.    Upon information and belief, Defendants knew or had reason to know that Mobile County Water would rely upon the skill and judgment of Defendants in the design, manufacture, sale, and installation of said AMI system and its associated software, documentation, services, and equipment including, but not limited to, the water meters in providing an AMI system and associated components fit for their particular purpose.

103.    Defendants breached the implied warranty of fitness because the AMI system and its associated software, documentation, services, and equipment including, but not limited to, the water meters were not fit for said purpose, and were not free of defects in materials and workmanship which has caused and continues to cause Mobile County Water to expend considerable time, money, and resources.

104.    Plaintiff notified Defendants of said failures and deficiencies within a reasonable time of discovery, yet Mueller Systems and its agent(s) failed to repair or replace all the meters and other AMI system components and return Mobile County Water's AMI system to fully operating as represented and/or required by the Proposal, Mueller Limited Warranty, and subsequent representation by Mueller Systems and its agents.

105.    As a direct, foreseeable, and proximate result the breach, Mobile County Water has suffered significant injuries and monetary damages including, but not limited to, remediation costs, loss of use, lost revenue, lost efficiency, and other actual and consequential damages, and Mobile County Water will continue to suffer such damages.

**WHEREFORE**, MOBILE COUNTY WATER demands judgment against all Defendants for monetary damages, interest, attorney fees and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT VIII – BREACH OF SERVICE AGREEMENT

106.    Mobile County Water incorporates by reference each of the allegations made in paragraphs 1-105 above as if fully set forth herein.

107.    Mueller Systems' failure to properly service and maintain the software and equipment supplied to Mobile County Water so as to allow the AMI system to function correctly breached the Service Agreement.

108.    As a result of Defendants' multiple breaches of the Service Agreement, Mobile County Water has suffered significant injuries and damages in excess of several millions of dollars including, but not limited to, remediation costs, loss of use, lost revenue, lost efficiency, and other actual and consequential damages, and Mobile County Water will continue to suffer such damages.

**WHEREFORE**, MOBILE COUNTY WATER demands judgment against all Defendants for monetary damages, interest, attorney fees and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT IX – NEGLIGENCE

109.    Mobile County Water incorporates by reference each of the allegations made in paragraphs 1-108 above as if fully set forth herein.

110.     Defendants owed a legal duty to Mobile County Water to exercise reasonable and due care in their design, sale, or installation of a functional AMI system and its associated software, documentation, services, and equipment including, but not limited to, the water meters that was purchased by Mobile County Water.

111.     Defendant Mueller System owed a legal duty to Mobile County Water set forth in the Mueller Limited Warranty and subsequent communications with Mueller Systems' agents to repair and replace any defective software or equipment, including the meters, and ensure the AMI system functioned properly.

112.     Defendants breached their duties owed to Mobile County Water and, under the circumstances, Defendants' breaches constitute negligent, willful, and/or reckless conduct.

113.     As a direct, foreseeable, and proximate result of the breach, Mobile County Water has suffered significant injuries and monetary damages including, but not limited to, remediation costs, loss of use, lost revenue, lost efficiency, and other actual and consequential damages, and Mobile County Water will continue to suffer such damages.

**WHEREFORE**, MOBILE COUNTY WATER demands judgment against all Defendants for monetary damages, interest, attorney fees and for such other and further relief as this Court deems just and proper under the circumstances.

## COUNT X – WANTONNESS

114.     Mobile County Water incorporates by reference each of the allegations made in paragraphs 1-113 above as if fully set forth herein.

115.     Defendants owed a legal duty to Mobile County Water to exercise reasonable and due care in their design, manufacturing, sale, and installation [OG said design and installation-check PL stuff] of a functional AMI system that was purchased by Mobile County Water.

116. Defendants Mueller Systems and its agent(s) owed a legal duty to Plaintiff set forth in the Mueller Limited Warranty and subsequent communications with Mueller Systems and its agents to repair and replace any defective software or equipment, including the meters, and ensure the AMI system functioned properly.

117. In breaching the duties described above, Defendants acted in a wanton, willful, and reckless manner.

118. Defendants knew or should have known of the danger to Mobile County Water created by Defendants' conduct, practices, actions, and inactions.

119. Defendants knew or should have known of the likely impact, harm, damage, and injury their conduct would have on Mobile County Water.

120. Defendants' conduct, practices, and inactions evidence Defendants' reckless disregard for Mobile County Water's operations.

121. As a direct, foreseeable, and proximate result of the breach, Mobile County Water has suffered significant injuries and monetary damages including, but not limited to, remediation costs, loss of use, lost revenue, lost efficiency, and other actual and consequential damages, and Mobile County Water will continue to suffer such damages.

**WHEREFORE**, MOBILE COUNTY WATER demands judgment against all Defendants for monetary damages, interest, attorney fees and for such other and further relief as this Court deems just and proper under the circumstances.

### PLAINTIFF REQUESTS TRIAL BY JURY

Filed this 23rd day of July, 2025.

Respectfully submitted,

*/s/ Jay M. Ross*
JAY M. ROSS
GARRETT ZOGHBY
AVA RINGHOFFER
*Attorneys for Plaintiff*

**OF COUNSEL:**
ADAMS AND REESE LLP
11 North Water Street, Suite 23200
Mobile, Alabama 36602
P. O. Box 1348 (36633)
Phone: (251) 433-3234
Fax: (251) 438-7733
jay.ross@arlaw.com
garrett.zoghby@arlaw.com
ava.ringhoffer@arlaw.com

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL BY FILER AS FOLLOWS:**

SOUTHERN PIPE & SUPPLY COMPANY, INC.
c/o Registered Agent, CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

MUELLER SYSTEMS, LLC
c/o Registered Agent, CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104

**DEFENDANTS TO BE SERVED BY PRIVATE PROCESS AS FOLLOWS:**

Bobby Barker
308 Ford Road
Notasulga, AL 36866

Scott Carpenter
108 St. Charles Drive
Helena, AL 35080

Randy Paradis
3660 NE 45th Place
Ocala, FL  34479